# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ADRIANA LLAMES,

    Plaintiff,

v.

JP MORGAN CHASE & CO. and
NORTHSTAR LOCATION SERVICES,
LLC,

    Defendants.

No. 11 CV 5899
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Adriana Llames ("Llames" or "Plaintiff") is seeking to recover damages as well as reasonable attorneys' fees, costs, expenses, and other equitable relief from Defendants, Chase Bank USA, N.A. ("Chase") and Northstar Location Services, LLC ("Northstar"). Llames alleges violation of the Illinois Consumer Fraud and Deceptive Business Act ("ICFA"), common law fraud, breach of contract, unjust enrichment, and violation of the Credit Card Accountability Responsibility and Disclosure Act ("CARD Act"). In addition, Llames alleges that Northstar violated the Fair Debt Collecting Practices Act ("FDCPA") and intentionally inflicted emotional distress. The complaint was properly removed to Federal Court, and Defendants now move to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

For the reasons to follow, the motion to dismiss is granted as to Count IV and denied as to Counts I, II, III, V, VII, and VIII.

## I. BACKGROUND

According to Plaintiff Llames, on or about September 29, 2007, she requested that Defendant Chase add her as an authorized user to the credit card account belonging to Konrad

Schaumloffel ("Schaumloffel"), her boyfriend at the time. On or about October 7, 2007 Chase denied Plaintiff's request to be added and indicated that further information, such as proof of home address and a home telephone number, was needed. On or about November 8, 2007, Plaintiff responded with a letter and enclosed copies of her cable bill, driver's license, and lease. She did not provide a home telephone number because she did not have a home number.[1] Afterwards, Chase never contacted her to approve her as an authorized user or joint card member and never sent her any invoices to notify her of charges or her obligation to the account. Llames was, in fact, added to the account.

In November of 2008, Schaumloffel sent a Request to Accept Sole Responsibility for Account to Chase, and that request was subsequently denied. Meanwhile, in January of 2009, Llames and Schaumloffel ended their relationship. During that time, Schaumloffel had a balance on the account due to charges he made by and for himself.

On August 5, 2009, Schaumloffel sent a second Request to Accept Sole Responsibility for Account to Chase, and that request was also subsequently denied. Later that month, Llames talked to a person from Chase over the phone, and the person told her that she would not be taken off the account and released in full until the past due amount of $4,065.00 was paid. Subsequently, Llames went to a local Chase branch and paid the past due amount. A Chase employee faxed a request to the Chase Card Services Executive Office to verify the payment and to request Llames be taken off of the account.

---

[1] The facts contained in the foregoing two sentences were not in the complaint, but Plaintiff does not contest their inclusion in the briefing.

After paying the $4,065.00, Defendant Northstar called Llames to inform her that she was jointly responsible for charges to the account. She informed Northstar that she was not an authorized user or joint cardmember. In September of 2010, Llames sent a cease and desist letter to stop collection efforts. Northstar acknowledged receipt of the letter. Llames continued to receive phone calls from Northstar seeking to collect money on the account balance.

In October of 2010, Chase removed Llames from the account after receiving a letter outlining her rights and claims under it. Chase denied Llames's request to be reimbursed for the $4,065.00 plus costs that she incurred for having been named on the account for which she was not approved to use. Llames alleges that she has suffered damage to her credit rating and suffered mental anguish and stress from the aggressive debt collection efforts.

Llames alleges the following counts in her complaint: (I) Violation of the Illinois Consumer Fraud and Deceptive Business Act; (II) Common Law Fraud; (III) Breach of Contract; (IV) Unjust Enrichment; (V) Violation of the Credit Card Accountability Responsibility and Disclosure Act; (VII) Violation of the Fair Debt Collecting Practices Act; and (VIII) Intentional Infliction of Emotional Distress.[2] Defendants now move to dismiss Plaintiff's complaint in its entirety.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) permits a court to dismiss a claim where plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true.

---

[2] Plaintiff conceded that Count VI should be dismissed, and it is therefore not discussed here.

3

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). To survive a Rule 12(b)(6) motion, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed.R.Civ.P. 8(a)(2)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). The facts must provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Id.* Plaintiff must plead its facts so that, when accepted as true, they show the plausibility of its claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III. DISCUSSION

### A. Violations of the Illinois Consumer Fraud and Deceptive Business Act

The ICFA prohibits "unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2. To prove a private cause of action, plaintiff must establish: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill.2005) (citation omitted). Defendant does not dispute that Plaintiff has plead sufficient facts to meet this test.

However, Chase first moves to dismiss Count I on the ground that the dispute is governed by Delaware law. Chase argues that by stipulating that she was added to the credit card account by Chase, Llames agreed to be bound by the Cardmember Agreement ("CMA") that contains a

4

Delaware choice-of-law provision. In response, Llames notes that she only stipulated that she was added to the account by Chase, not that she agreed to have them do so. Defendant contests Llames' argument vigorously by pointing to Plaintiff's repeated efforts to be added to the account, including her first letter requesting that she be added, and her follow-up attempt which included the bills and lease. But - at least according to Plaintiff - she never heard anything in response to that final effort. She alleges that she received no confirmation and no follow-on documentation. Since I must look at the alleged facts in the light most favorable to the Plaintiff, I must assume that Plaintiff did not agree to be added to the account because she did not see or agree to the terms, and thus did not intend to be bound by the CMA.

Chase next maintains that the dispute amounts to a breach of contract claim and therefore is not actionable under statutory consumer fraud. *Avery*, 835 N.E.2d at 844. When a defendant's actions implicate consumer protection concerns, however, it is more than a mere breach of contract claim. *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 278 (2009). In this dispute, Llames also alleges that Chase engaged in unfair practices: misrepresentation, concealment, suppression, or omission of material facts by improperly adding her to the account initially, denying her subsequent requests to be removed, and inducing her to pay $4,065.00 even though Chase continued to hold Plaintiff responsible for the debt on the account. Thus, Llames's claim survives the motion to dismiss if she pleads more than just a breach of contract.

To determine whether Llames has pled the unfair practices beyond a breach of contract, I must apply the test set forth by the Illinois Supreme Court in *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (2002). There are three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether

it causes substantial injury to consumers. *Id.* The Illinois Supreme Court noted that "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 961 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 612 A.2d 1130, 1143 (1992)).

In *Demitro v. Gen. Motors Acceptance Corp.*, the court found that the defendant's conduct of retaining possession of a wrongfully repossessed vehicle was oppressive and therefore unfair because it left plaintiff with only two options: to pay an entire outstanding balance or to lose his vehicle. 902 N.E.2d 1163, 1169 (2009). The court also found that the plaintiff suffered substantial injury because his credit rating was damaged and he lost use of the vehicle. *See id.* Here, Llames has alleged that Chase's conduct was oppressive and therefore unfair because after it improperly added plaintiff to the account, it refused to remove her until she paid the $4,065.00. Because I must look at the alleged facts in the light most favorable to the plaintiff, Chase's motion to dismiss Count I is denied.

### B. Common Law Fraud

Under Illinois law, the elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (1996). In addition, allegations of fraud must conform to the heightened pleading standard set forth by Fed.R.Civ.P. 9(b) and require that plaintiff plead all allegations with particularity.

6

Chase first moves to dismiss Count II on the grounds that Llames's common law fraud claim is preempted by *Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011). In *Purcell*, the Seventh Circuit held that the FCRA preempted state law claims relating to reporting information to consumer reporting agencies. *Id.* Chase argues that Llames has plead that she had a damaged credit rating from Chase reporting to consumer reporting agencies, and therefore her common law fraud claim is preempted. However, Llames's common law fraud claim is that Chase made false, material representations to her that they would remove her from the account, which led to, amongst other things, a damaged credit rating. Thus, the conduct that Llames alleges is not preempted by *Purcell* because her claim does not rest on reporting information to consumer reporting agencies.

Chase next maintains that Llames's common law fraud claim fails FRCP 9(b)'s requirement of pleading specificity for fraud claims. A heightened requirement of pleading for fraud claims is required to minimize the "extortionate impact that a baseless claim of fraud can have on a firm or an individual." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005). While the particularity requirement does not require a plaintiff to plead facts that if true would show defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations omitted). Llames alleges that a Chase employee promised her that Chase would remove her from the account upon payment of the $4,065.00 on August 28, 2009 at a Chase branch office located on Division and Clark in

7

Chicago, Illinois. This is sufficient particularity under the circumstances. Thus, Llames has met the particularity requirements of FRCP 9(b).

For these reasons, Chase's motion to dismiss Count II is denied.

## C. Breach of Contract

In order to successfully plead a breach of contract claim, Llames must allege: (1) the existence of a valid and enforceable contract; (2) plaintiff's performance of the contract; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff. *Hickox v. Bell*, 195 Ill. App. 552 N.E.2d 1133, 1143 (1990). In addition, consideration is a necessary element to the formation of a valid contract. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 826 N.E.2d 430, 439 (2005).

Chase claims that because Llames stipulated to having been added as a joint cardholder by Chase, she was bound by the CMA and therefore was subject to a pre-existing obligation to pay the $4,065.00 due under the account. Thus, Chase argues, agreement to pay the amount does not constitute consideration. Consideration is any performance or promise that is a benefit to one party or a disadvantage to the other party. *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 16 (2007). However, a promise to perform an act which one is already legally obligated to do is not consideration and does not create a new obligation. *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 679 (2004).

At the motion to dismiss stage, I must take Plaintiff's factual allegations as true. While Llames stipulated that she was added to the card account by Chase, she denies having agreed to or intended to be bound by the CMA. She alleges having entered an oral contract with Chase that if she paid the $4,065.00, she would be released from the account. After she paid the

8

amount, Chase did not remove her from the account. Llames alleges that the payment of $4,065.00 was to her disadvantage because she had a right to retain the money, and it was to Chase's advantage because the past due balance was paid in full even though she was not legally obligated to pay it. I must accept Llames's factual allegation that she did not intend to be added to the account as true. As such, Llames did not have a preexisting obligation to pay the $4,065.00, and it could constitute valid consideration.

For these reasons, Chase's motion to dismiss Count III is denied.

### D. Unjust Enrichment

Unjust enrichment is a quasi-contract theory that permits courts to imply the existence of a contract where none exists to prevent unjust results. *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008). To state a cause of action for unjust enrichment under Illinois law, the plaintiff must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678–679 (1989) (citations omitted). However, when two parties' relationship is governed by contract, they may not bring a claim for unjust enrichment unless the claim falls outside of the contract. *Prudential Ins. Co. of Am.*, 548 F.Supp.2d at 622 (citation omitted).

Chase argues that because Llames alleges a breach of contract claim, she cannot also claim unjust enrichment unless specifically pled in the alternative. The Seventh Circuit has held that while plaintiffs need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing, such as

9

the use of "either-or" or "if-then" language. *Holman v. Indiana*, 211 F.3d 299, 407 (7th Cir. 2000). However, a quasi-contract claim is not properly pled in the alternative if the claim reasserted all allegations previously stated, including those alleging the existence of a contract. *See Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006). In this dispute, Llames did reallege and reincorporate by reference all allegations previously stated alleging the existence of the contract that if she paid the $4,065.00, Chase would remove her from the credit card account. But, she did not clearly state that her claim of unjust enrichment was pled in the alternative. Thus, Chase's motion to dismiss Count IV is granted.

### E. Violations of the Credit Card Accountability Responsibility and Disclosure Act

In Count V of her complaint, Llames alleges that Chase violated the CARD Act by failing to provide notices to her at the end of each billing cycle for which there was an outstanding balance. Under the CARD Act, the creditor shall transmit to the obligor "for each billing cycle at the end of which there is an outstanding balance in that account" the "outstanding balance in the account at the beginning of the statement period." 14 U.S.C. 41 § 1637(b)(1). Truth in Lending Act ("TILA") claims under the CARD Act have a one-year statute of limitations. 15 U.S.C. 41 §1604(e). Chase agrees that any liability for failure to send Llames monthly bills is limited to alleged violations within one year of the filing of her complaint. Llames filed her complaint in July of 2011. Chase removed Llames from the account in October of 2010. Therefore, liability for alleged failure to send Llames monthly billing statements would accrue for the months of July, August, and September of 2010. Taking Llames's factual allegation as true that Chase did not send her monthly statements at the end of each billing cycle with an outstanding balance, the motion to dismiss Count V is denied.

### F. Allegations Against Northstar

Defendant Northstar moved to adopt Chase's motion to dismiss to the extent it seeks the court to rule as a matter of law that Llames was liable for the debt. In Counts VII and VIII of her complaint, Llames alleges both that Northstar violated the FDCPA by continuing to harass and threaten her even after receipt of a cease and desist letter, and that Northstar intentionally inflicted emotional distress by using abusive tactics and threats as a means to exert its power over her to pressure her into paying the amount due on the account. However, even assuming that Llames is liable for the debt, it is unclear how establishing liability disposes of the FDCPA and IIED claims.

The primary goal of the FDCPA is to "protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *See generally Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir.1994), *aff'd*, 514 U.S. 291, (1995). The FDCPA defines a debt as "any obligation or *alleged* obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). Because alleged obligations fall under the definition of debt, application of the FDCPA to debt collectors does not hinge on whether the alleged debtor is liable for the debt. Therefore, Northstar's assumption that establishing liability for the debt disposes the FDCPA claim fails.

In order to plead an IIED claim, a plaintiff's emotional distress must be severe and the defendant's conduct "extreme and outrageous." *See Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Courts have held that conduct upon which an action for IIED is based must extend beyond "mere insults, indignities, threats, annoyances, petty oppressions or trivialities."

*Id.* Although "fright, horror, grief, shame, humiliation, worry etc." may be termed emotional distress, the law "intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* at 90 (citations omitted). Because IIED is a tort claim, it is unclear how establishing liability for a debt would excuse a defendant's alleged tortious conduct. Therefore, Northstar's assumption that establishing liability for the debt disposes the IIED claim also fails.

Llames's claims against Northstar survive the motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED WITHOUT PREJUDICE as to Count IV and DENIED as to Counts I, II, III, V, VII, and VIII.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: March 23, 2012

12